■ In the Matter of LOKENDRA K. SINGH, Petitioner, v NEW YORK STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [652 NYS2d 672] —Peters, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public

Health Law § 230-c [5]) to review a determination of respondent which revoked petitioner's license to practice medicine in New York.

Petitioner, a psychiatrist licensed to practice medicine in this State, was charged on January 10, 1995 with six specifications of professional misconduct which alleged, *inter alia*, that between February 5, 1987 and October 10, 1991, he engaged in sexual intercourse on several occasions with patient A while she was his patient and prescribed lithium for her without having seen or examined her within an appropriate period of time or having arranged for the monitoring of her lithium level. It further alleged that he failed to maintain adequate medical records of her care and treatment.

Prior to the evidentiary hearing, a conference was held before an Administrative Law Judge (hereinafter ALJ). The Department of Health sought to introduce, *inter alia*, a consent order dated April 2, 1992 wherein petitioner admitted his guilt to 16 specifications of professional medical misconduct regarding his sexual intercourse with a different patient since several of petitioner's admissions in such order mirrored patient A's allegations in the instant case.* Although the ALJ allowed the consent order to be marked for identification, its admission into evidence was denied due to its highly prejudicial nature. Moreover, since it appeared that patient A remained silent about her sexual relationship with petitioner until she read about the consent order in a local newspaper, prompting her to contact an attorney regarding her allegations, the parties entered into a stipulation which provided that "[i]n approximately April or March of 1992, there was an article in a local newspaper concerning a similar case". They also stipulated that "[petitioner's] license to practice medicine was suspended in another matter for six months, beginning approximately April 10 of 1992 through October 9 of 1992, by [respondent]".

With these stipulations on the record, a fact-finding hearing was held whereby testimony was received from, *inter alia*, patient A and petitioner. A Hearing Committee of respondent found patient A's testimony highly credible and petitioner's testimony was inconsistent with material prior statements. Sustaining all charges, the Hearing Committee revoked petitioner's license to practice medicine.

In this proceeding, petitioner does not challenge the suffi-

---

* Under the terms of the consent order, petitioner's license to practice medicine was suspended for five years, but stayed after six months if certain conditions were met.

ciency of the evidence. Instead, he contends that several due process errors deprived him of a fair hearing. First, petitioner contends that due to various questions and responses given, the Hearing Committee, in violation of the stipulation entered into between the parties, was advised of the previous case against petitioner. We disagree.

"It is well established that an administrative determination may only be annulled where prejudice so permeates the underlying hearing as to render it unfair" (*Matter of Jean-Baptiste v Sobol*, 209 AD2d 823, 824; *see, Matter of Morfesis v Sobol*, 172 AD2d 897, *lv denied* 78 NY2d 856). Unlike *Matter of Afif v Ambach* (134 AD2d 679), a license revocation hearing where there were repeated references to criminal proceedings against the petitioner in a close credibility situation (*supra*, at 683), the references here to the existence of a newspaper article, without revealing the similarity of the admissions contained in the consent order, were not, in our opinion, sufficiently prejudicial to require the determination to be annulled (*see, Matter of Jean-Baptiste v Sobol, supra*, at 824). Moreover, each of the references were objected to and sustained, followed by a direction to the Hearing Committee to disregard the improper question and answer.

We further find no error in the use by the Department of Health of statements made by petitioner during a preinvestigation meeting held pursuant to Public Health Law § 230 (10) (a) (iii). The record reflects that petitioner voluntarily cooperated in the investigation interview and was accompanied by counsel. Hence, once a proper foundation was laid, statements made during such interview could be properly used at the hearing on cross-examination for the purposes of impeachment (*see generally, Hayes v Henault*, 131 AD2d 930).

Similarly unavailing is petitioner's contention that the failure to accord him discovery pursuant to Public Health Law § 230 (10) (a) (iii) was violative of due process. Having had the opportunity to review and reject these requests made pursuant to the Public Health Law (*see, Matter of Sinha v Ambach*, 91 AD2d 703; *see also, Matter of Mussalli v Board of Regents*, 159 AD2d 746, *lv dismissed* 76 NY2d 931), we decline further review.

Accordingly, we hereby confirm the administrative determination in its entirety and dismiss the within petition.

Mikoll, J. P., Crew III, White and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.